## TWAY v. STATE.

CRIMINAL LAW — RAPE — INFORMATION — EVIDENCE.

1. A defect in the manner in which a criminal offense is charged in the information should be taken advantage of by motion to quash, and an objection on account of such a defect made for the first time in the appellate court comes too late.

2. The word "ravish" not occurring in the statute defining the crime of rape, and the information being in the language of the statute, the information is sufficient, although the word "ravish" is not used in describing the offense.

3. A conviction for rape may lawfully be based upon the unsupported testimony of the prosecuting witness; but there is no principle of law which presumes the unsupported statement of the woman to be true, and the statement of the man to be false.

4. Defendant having admitted that he had illicit intercourse with the prosecuting witness, but claimed that it was with her consent, such admission is not corroboration of the testimony of the prosecuting witness that such intercourse was forcible. A confession of intercourse without force, and with the woman's consent, is not corroboration of the charge that it was forcibly and without her consent.

5. In rape, where the element of putting in fear is absent, the resistance of the woman must be to the utmost of her power.

6. The testimony in this case held insufficient upon which to base a conviction of the crime of rape.

[Decided Sept. 27, 1897. Information filed in District Court May 23, 1896.]

ERROR to the District Court for Fremont County, HON. JESSE KNIGHT, Judge.

Thomas P. Tway was found guilty of the crime of rape upon an information filed in the District Court of Fremont County. He was sentenced to fifteen years in the penitentiary. A motion for new trial was overruled, and defendant applied for a writ of error. The information charged that "Thomas P. Tway, late of the county aforesaid, on the 10th day of May, A. D. 1896, at and in the county of Fremont, in the State of Wyoming, feloniously, unlawfully, forcibly, and against her will, did have carnal knowledge of a woman, one Julia E. Stevens." The statute defined rape as follows: "Whoever unlawfully has carnal knowledge of a woman forcibly and against her will, or of a woman or female child under the age of eighteen years, either with or without her consent, is guilty of rape, and shall be imprisoned in the penitentiary for any term not less than one year, or during life." (Laws 1890-91, Chap. 6, Sec. 1.) The material facts are stated in the opinion.

*M. C. Brown*, for plaintiff in error.

An information for rape should charge an assault, or use the word "ravish," which includes the idea of an assault. (Bish. on Stat. Cr., Sec. 478; 1 Whart. Cr. L., Sec. 573 (9th ed.); Harmon v. Com., 12 S & R., 69; 3 Bish. Stat. Cr., Secs. 378-79, 381-82; Evans v. State, 25 Tex., 303; Roberts v. State, 21 Ark., 183.) The defendant was informed against on May 23, 1896, but thirteen days after the alleged commission of the crime, and the defendant on the 23d day of June applied for continuance, on the ground of the absence of witnesses. The court held the motion sufficient, but denied the con-

tinuance on account of the admission by the Prosecuting Attorney, under the statute, that, if present, the witnesses named in the affidavit would swear as set forth in defendant's affidavit; and no time was then allowed defendant to get the witnesses. This was error. It was in violation of Sec. 10, Art. 1, of the Constitution, which provides that "a party accused shall be confronted with the witnesses against him, and have compulsory process served for obtaining witnesses." (People v. Diaz, 6 Cal., 248; People v. Vermilyea, 7 Cow., 383; 14 Johns., 341; 5 Cow., 15; 6 id., 567; 15 Nev., 372; 2 id., 324; 28 Cal., 448; 16 Wend., 603.)

The Attorneys for the State in argument not only referred to matters outside the record, but indulged in very unusual personal abuse of the defendant. That calls for a reversal of the judgment. (44 Wis., 29; 68 Ala., 476; 22 Ia., 504; 33 Tex. App., 472; 41 N. H., 317; 66 Me., 564; 57 N. Y., 683; 49 Ind., 33; id., 124; 2 id., 438; 11 Ga., 633; 15 id., 395; 25 id., 225; 33 Conn., 471; 63 Miss., 505; 77 N. C., 502; 13 R. I., 661; 67 Wis., 552; 92 Cal., 283; 62 id., 411; 78 id., 327; 79 id., 415; 75 N. C., 306; 100 Ind., 268; 101 id., 85; 92 id., 34; 32 S. W. (Mo.), 1149; 33 S. W. (Tex.), 873; 19 S. W. (Mo.), 660; 27 id., 1109; 36 S. W. (Ark.), 947; 25 id., 281; 18 id. (Fla.), 194; 33 id. (Tex.), 227; 65 N. W. (Wis.), 61; 35 S. W., 289; 32 id., 693; 36 id., 584; 44 id., 623.)

The uncorroborated testimony of the prosecutrix is not sufficient to support a conviction of rape. Particularly is this so where the evidence shows the prosecutrix to be a woman of questionable character and reputation as to virtue. (Matthews v. State, 19 Neb., 330.) The testimony is insufficient to support a conviction. There was not the resistance on the part of the prosecutrix which is essential to make out a case of rape, and that the intercourse was with her consent as defendant testified is corroborated by the circumstances (see, Olson v. State, 11 Neb., 276; Whittaker v. State, 50 Wis., 518;

Moran v. State, 25 Mich., 356; State v. Murphy, 6 Ala., 765; Pleasant v. State, 13 Ark., 360; People v. Hulse, 3 Hill, 309; People v. Benson, 6 Cal., 222; Innes v. State, 42 Ga., 473; Gazley v. State, 17 Tex. App., 267; Montressor v. State, 19 id., 281; People v. Abbott, 19 Wend., 92; People v. Brown 47 Cal., 447).

*Benjamin F. Fowler*, Attorney General, for the State.

The objection that the indictment is not sufficient to sustain a conviction can not be raised for the first time in this court. (Boulter v. State, 42 Pac., 606.) The information was in the words of the statute, and is sufficient. (State v. Philbin, 38 La. Ann., 964; Smith v. Com., 85 Va., 924; State v. McGuffin, 36 Kan., 315.) By not demurring or making motion in arrest, the plaintiff in error waived every defect in the form of the information. (5 Mont., 246; State v. Gibbs, 25 Pac., 288; State v. Foot Yow, 32 Pac., 1031; State v. Hinckley (Idaho), 42 id., 510; Taylor v. People, id., 652 (Colo.); Brown v. People, 36 id., 1040 (Colo).) The motion for continuance was properly denied upon the admission by the attorney for the State that the absent witnesses would testify as set forth in the affidavit for continuance. (3 Ency. L., 820; Hoyt v. People, 140 Ill., 588; Comerford v. State, 23 O. St., 599; Terr'y v. Harding, 6 Mont., 323; Keating v. People (Ill.), 43 N. E., 724.) The provisions of Sec. 10, Art. 1 of the Constitution do not affect the question. (Hoyt v. People, supra.)

Alleged impropriety in the remarks of counsel in argument will not be considered as ground of error, when presented by affidavit merely, and not as a part of a settled case or bill of exceptions. (31 N. W. (Minn.), 176; State v. Helm (Ia.), 66 id., 751; State v. Paxton (Mo.), 29 S W., 705; 74 Ia., 637; 73 id., 442; 50 N. W., 885; 55 id., 336; 29 Atl. (Pa.), 16; 30 Fla., 41; 29 S. W. (Tex.), 159; 20 id., 590.) It is not the rule that a conviction for rape can not be had upon the un-

supported testimony of the prosecutrix, but the contrary is the true and best sustained rule. (Barnett v. State, 3 So., 612; State v. Cook, 61 N. W., 185; People v. Rangod, 44 Pac., 1071; Kirby v. Terr'y (Ariz.), 42 id., 952; Garrison v. People, 6 Neb., 283.) The testimony is sufficient to sustain the conviction, and the statements of plaintiff in error as a witness tended to corroborate the testimony of the prosecutrix.

CORN, JUSTICE.

Four reasons are assigned why the verdict should be set aside in this case and a new trial granted.

1.   That the information is insufficient to sustain a conviction.

2.   That the court erred in denying the application for a continuance.

3.   On account of certain abusive language alleged to have been used against the defendant by the attorneys for the State upon the trial.

4.   That the evidence is insufficient to sustain the verdict.

It is contended by plaintiff in error that the information is insufficient because the word "ravish" is not used in describing the offense. The alleged defect being in the manner in which the offense is charged, the objection should have been made by a motion to quash in the court below. The attention of the district court was not called to it in any way, and the question is not properly before us for consideration. But the information is in the language of the statute, and is sufficient. Bishop says : "There are commonly employed in setting out some crimes, certain technical words for which it is believed there are no substitutes ; " and he mentions as one of them "ravish," in the indictment for rape. He adds : "So the doctrine is usually stated in the books ; but the reason for it in most cases is, that either the offense is now, or it was in its origin, statutory ; and the statutory term must be employed to identify it, such being the rule for all

indictments on statutes. For example, murder as distinguished from manslaughter, is a statutory crime, and hence the necessity for the technical words just mentioned. Under modern statutes, in different language from the old common law and statutory definitions, the use of the same technical words is not always essential.'' 1 Bish. Crim. Proc., Sec. 335 ; and he states, Vol. 2, Sec. 953, '' 'Ravish' is indispensable in the common law indictment because it is in the statute of Westm. 2.'' The words do not occur in the definition in our statutes, and therefore there is no necessity for its use in describing the offense.

It is further urged by plaintiff in error that the evidence is insufficient to sustain a conviction ; and it is contended that a conviction can not lawfully be had upon the unsupported testimony of the prosecuting witness. No such rule of law prevails in this State. Our Constitution provides that no person shall be convicted of treason unless on the testimony of two witnesses to the same overt act. In perjury, owing to the nature of the offense, the rule is that there must be more than the testimony of one witness as to the falsity of the oath, as otherwise it would simply be '' oath against oath.'' And in seduction, our statute provides there shall be no conviction on the unsupported evidence of the female offended against. There is no such rule in cases of rape. Bishop says (2 Crim. Proc., 968), '' The jury can even convict on the unsupported testimony of a strumpet ;'' and he significantly adds, '' The court, if dissatisfied with the verdict, an set it aside.''

But the jury are not to convict simply because the law permits them to, and there is no principle of law which presumes the unsupported statement of the woman to be true, and the statement of the man to be false. Such a rule would not only be unreasonable, but dangerous and wicked. And in practice, the number of cases where there is nothing to corroborate, or cast suspicion upon the testimony of the woman is so small that it may be said they do not exist.

In this case, according to the testimony of the prosecu-

trix, the defendant, whom she had known some five years, came to the house on the 9th of May, about sundown, her husband being away, and there being no one at home but herself and her three children, aged respectively six years, two years, and ten months. He spoke of his horse being tired, and she asked him to stay to supper, and told him to feed his horse. After supper she put the children to bed, and about nine o'clock she showed him to a bedroom, handed him a lamp, and went out, locking the door of his room after her. Up to this time there had been nothing improper in his conduct. There was a log partition between her room and his. He asked her several times if she did not want the lamp, she replying that she did not. · He made an indecent proposal to her, offering to give her a cow if she would comply. She says that she refused, and that they talked through the partition for a long time, perhaps an hour. He asked for a drink of water, and she told him there was water by the kitchen door which he could get; though it is not explained by the evidence how he was to get out of his room, being locked in, or whether it was necessary for him to get out in order to obtain it. He finally asked for some matches, and she states that she went with them to his door intending to push them under to him, when he broke open the door, dragged her in, and in half an hour to an hour had intercourse with her three times by force. That she resisted with all her strength throughout the first connection. That she was a strong woman, but that her strength was not sufficient, and that at the other times she was too much exhausted to make much resistance. That the baby cried, and upon her promise to return he permitted her to go to it. That the defendant went to sleep, and she did not return. That she was not afraid of the defendant, but he overcame her by superior strength. That there were no bruises or marks upon her body, and that her clothing was not torn. The next morning she got breakfast, and they took their meal together, nothing unusual occurring. She went that day to a neighboring

ranche, but did not tell the people whom she saw of the occurrence. Indeed, it does not appear by any direct evidence that she ever reported it to any one. But she states that her husband returned on the 19th or 20th, and the record discloses that he made affidavit to the information in this case on the 23d of the same month. The defendant states the facts in much the same way, but says that when she brought the matches, she opened the door and came into his room, and he had connection with her by her consent. Several witnesses testified that the reputation of the prosecutrix for chastity was bad, but the testimony is conflicting upon that point.

The evidence is not clear as to the situation of the rooms with reference to each other; and it is not easy to determine whether in locking the door she simply excluded him from her own room, or whether her purpose was to imprison the defendant for the night. At all events she locked him into his room, and up to this time he had made no improper advances. To his repeated questions about the lamp she as often replied that she did not want it, perhaps suspecting that his motive was to induce her to come to his room. After making an indecent proposal, and after they had talked about it for perhaps an hour, he asked for the matches. She must have known that this request was a mere pretext for the same purpose to induce her to come to his room or to open the door; and yet by her own testimony she brought them. Then she says he broke open the door, and dragged her in. Yet there is no evidence whatever to show that the door or the lock was broken or injured in any way. The husband of the prosecutrix was a witness in the case, and testified that he was familiar with the lock, having put it on. But he states only that at the time of the trial it was still on the door.

She further states that having had intercourse with her by force three times, he permitted her to go to her room to quiet her baby, upon her promise to return. That in the meantime he went to sleep, and she did not return.

In all this there is no mark or indication of a struggle such as a strong and healthy woman, determined to protect her honor, would make. We learn nothing of any breakage, or disarranging of chairs or other furniture. Her clothing is not torn, and there are no bruises upon her body. There has apparently been no noise to wake the children, but they are sleeping peacefully, except the little one, which is being gotten to sleep in a way, so far as the evidence indicates, not unusual in any quiet household. The scene is very different from the one which we may reasonably suppose would be created by an excited woman who had just had inflicted upon her the abominable outrage and humiliation involved in the crime charged in this case. She meets with some of her neighbors the next day, but makes no complaint or any report of the occurrence of the night before. In the meantime the conduct of the defendant is not that of a man who has just committed a crime which ought to, and probably would, consign him to the penitentiary for a long term of years; but his animal instincts satisfied, apparently in a way which he thinks involves him in no danger, he goes to sleep, takes breakfast with the family in the morning, rides away, and at no time, so far as the evidence shows, attempts flight, or exhibits in any way the fear of being called to account for an infamous crime.

It is urged that the fact that the illicit intercourse is admitted by the defendant is corroboration of the testimony of the prosecuting witness. We do not think so. Whether it was forcibly and without her consent is the precise issue and the only issue in the case. A confession of intercourse without force, and with her consent, is not corroboration of the charge that it was forcibly and without her consent.

Where the element of putting in fear is absent (and the prosecutrix in this case testifies that she was not afraid of the defendant), the authorities are all to the effect that the resistance of the woman must be to the utmost of her power. This is a question of the sufficiency of the evi-

dence to establish that fact, and it must be considered, as in any other case, in the light of the surrounding circumstances. Those which are uniformly recognized as pointing to the use of force, and in most cases essential to establish that there was no consent whatever by the woman, are conspicuous by their absence. The prosecutrix was not marked or bruised or her clothing torn. Several witnesses testify that her reputation for chastity was bad. There is nothing to indicate the breaking of the door as claimed, or the noise, outcries, disorder, and confusion that would naturally result from the struggle of a strong woman to save herself from outrage. She parted upon friendly terms with the ravisher, and there is nothing to indicate that her complacency was the result of fear. She did not promptly complain of the outrage upon her, and the conduct of the defendant did not indicate that he anticipated trouble.

Upon the other hand the surrounding facts as detailed by the prosecutrix are consistent with the claim of the defendant, and tend to corroborate it. It would be a strange reversal of the principle that the State must clearly establish its case, to hold that the unsupported testimony of the prosecutrix must prevail against the testimony of the defendant, which is in some degree corroborated.

The evidence is insufficient to sustain the verdict. It is unnecessary to consider the other assignments of error. The judgment will be reversed and the case remanded for a new trial.

*Reversed.*

CONAWAY, C. J., and POTTER, J., concur.